We'll move to our third argument of the morning. This is Case No. 23-2521, Apogee Coal Company v. Director of the Office of Workers' Compensation Programs, Mr. Dray, correct? Yes, sir. Good morning, and may it please the Court, I'm Dominic Dray, and with Mark Solomons, I represent Arch Resources. I'll try to reserve three minutes for rebuttal. This case presents two important issues of administrative law. First, the agency changed its policy for bankrupt operators to shift liability to a different company retroactively as an insurer. Second, to avoid review, the Department of Labor takes a position in this Court that contradicts its position in the D.C. Circuit in Acosta and would leave Arch without any forum in which to challenge the policy change. Mr. Dray, before we get too much into the merits of this case, is there any reason the Court should hold off on ruling until the Supreme Court decides what it's doing with Chevron? If you think deference is important, then yes, but I don't think you need to because I don't think deference does any work in this case. And the reason I say that is that the ALJ and the Board both very clearly at pages 629 and 641 through 42 held our client Arch liable only as a self-insurer, not as an operator. But throughout the opinions, it moves back and forth between these concepts of operator liability, chiefly the question of where the person worked on his last day as a minor. That is the standard for operator liability. That is the only relevance of where somebody worked on his last day. And you can ask my friend on the other side, but Apogee was the operator. We were only held liable as a self-insurer. So you could almost think of this case as Arch Insurance Company, Inc. versus the director. The ALJ at one point seems to suggest that you're liable as a self-insurer as the parent company. So that would have been true if we were still the parent company. But this Court and others, and certainly the State of Illinois, respect corporate separateness. And when there's a transaction like this, and this has always been the rule, this is why there's a major APA problem. And frankly, under PAH versus CPFB, a major due process problem with the retroactive rulemaking, it has always been the case that when a company sells a subsidiary, the new owner is now the self-insurer of that entity. And self-insurance is not an occurrence-based. It is a claims-made trigger. How do we know that? Because as to this specific bankruptcy, the Patriot Coal Bankruptcy, DOL has already, in the Allen and Atkins cases, the citations are at page 28 of our opening brief, it has already explained that Magnum Coal Company, which was the first buyer before Patriot, Magnum, quote, assumes all black-lung claims liability effective 1106. That's in the Allen case. In Atkins, DOL says, quote, since the company was self-insured, a previous employer, ARCH, cannot be named liable in this matter. Now, in briefing before this Court, DOL says, oh, that was a mistake. Literally, that's what the brief says at page 38. But if it was a mistake, and this is not the first coal company to declare bankruptcy, in fact, there are legion coal bankruptcies out there, they would have citations as long as my arm for cases where they reached back to a prior parent company, not operator, and held it liable. But there are no such citations. Mr. Dray, can I ask you to just step back for a second, just on some overarching framing here? Is our focus on appeal on the ALJ's decision? Yes, sir. The board's decision, or some combination of both? Technically, what's on appeal is the ALJ's decision. Okay. And therefore, we look, and is, okay, so we look, in your view, we look through the board to the ALJ's decision? Yes, I believe that that's correct, although in this case, and perhaps Your Honor can sharpen this for me, if there's anywhere where you think they depart, but I don't see any difference. Well, here's where I'm going, and I'm going to ask, you know, your adversary the same question. On the threshold liability question, ARCH's liability question for Mr. Grimes' benefits, I think, because of Chenery, that the authority to impose liability against ARCH, it has to be identified and relied upon by the ALJ, and the question I had is, well, or the board, and that's why I asked you that question. In other words, if there's some statute, some regulation, some combination of either, that are not expressly relied upon, you with me? Yes. Okay. That there's a Chenery problem because the U.S., in fact, the U.S. Supreme Court has reversed circuit courts for identifying provisions that were not relied upon. So the question I have, therefore, is should we focus on both the ALJ's opinion and the board's opinion, or just one or the other? Yes. I think the ALJ's is the controlling and the one to which Chenery attaches, because the board is itself an appellate body, and the agency action is at the ALJ level, but it doesn't matter because both of them point to, and again, those pages are 629 for the ALJ, 641 through 42 for the board. We're held liable as a self-insurer of this other company. The board certainly makes that clear. I'm not so sure the ALJ's decision makes that clear. So to pick up on Judge Scudder's question, do we then just focus on the board, or is it a combination, or is it just the ALJ? Well, I mean, if there's any unclarity, then I suppose the board can resolve that for the court. In this instance, I don't see anything other than the ALJ explaining that we're on the hook as a self-insurer. And, in fact, there's a very helpful passage in the ALJ's decision. This is at 477. Hold on one second. Just hold on. Yes. No, this is worth the effort. Don't worry about running out of time. Okay. Okay. When you say 477, what, the appendix? Appendix, yes, sir. All right. Okay. All right. Go ahead. The first full paragraph, the ALJ explains both Magnum and Patriot could be considered successors. Wait. What page? You said 477? That's? APPX 477. Oh, sorry. Addendum 477. This thing? I can't read that. Well, hold on. The white or the red? Are you talking about something in your blue brief? The addendum that we submitted that the court is considering whether or not to accept. All right. I think it's got to be. What was not the white volume? This is the ALJ. What are you reading from? Let me get you. It's the ALJ's decision, and I apologize if I have the citation wrong in my notes. I'll clean it up when I get back up here in a minute. Because the ALJ's decision, at 477, you're deep in the ALJ's decision. Yes. You just may be citing the wrong page. I'm pretty deep in the ALJ's decision because I want to illustrate the way that this occurs. Okay. Why don't you make your substantive point, and then it looks to me like the ALJ's decision is in the. Well, I know it is. It's in the blue brief. It's in the blue brief. Yeah. Right. And it's not 477 pages long, thankfully. Thankfully, no. No, I'll get you the page from the ALJ's decision in a moment. All right. All right. But go ahead and make your point. Here's the substantive point. Both Magnum and Patriot could be considered successor operators if they satisfy, and then it says 494, those five criteria that you're allowed to introduce. Right. So far, so good. However, as the miner was not independently employed by either successor operator, which is true, he was only ever employed by Apogee, and then this is where it happens. Arch would remain primarily liable as the prior operator. That's not correct. They slide between this notion of operator and insurer liability in a way that makes no sense at all. Insurance depends on some sort of agreement, some kind of contract that forms an insurance obligation, and it has always been understood in this context and in every workers' comp program, including like the Longshore one that the federal government operates, that self-insurance is only applicable to the companies that you own at the time that a claim is made. And here's another important thing. We told DOL, as their regulations require, we told them when we effected this sale, by letter, that's at addendum 395, that one I'm confident of, that we told them when we sold these assets, and then you heard from the Atkins and Allen cases cited at 28 of our opening brief, they acknowledged that liability had been transferred. That has always been the rule. And at some point now in the appellate briefing, DOL says, well, you didn't obtain a release. They make that point, I think pages 21, 36 through 39, and 51 of their brief. They say you didn't get the one thing you need, which is a release of your liability. I am not aware of a single case in which anyone obtained a release, nor am I aware of any regulation. How do we get a release? What's the scope of the release? Is it by the money? Can I ask you another question just to back up a second? I think what you're saying is that if, and I know you said we're not. I got that. If ARCH is liable for the Grimes benefit, it's got to, that liability has got to root itself in positive law. What I mean by positive law is, and we can rule a few things out, there's absolutely no way it's the Constitution. It's not a treaty. Yes. Agreed. It's possible it's a provision of the statute, or more than one. It's possible it's a provision of the regulations, or more than one. But your point is that it is not contractual. Am I hearing you right? It is definitely not contractual. That's right. Okay. And so if, and therefore the two sources of positive law that make any sense are statutory and regulatory, the CFR. Yes, sir. That's it. Okay. So then can you explain the nature of the agreement or the undertaking? You guys are using both terms, and you know better than I do. But self-insurers apparently file either an agreement or an undertaking or maybe both with the Department of Labor to satisfy the regulations regarding self-insurance. Can you explain that a little bit? What is that thing that gets filed? Okay. Because when parties use the term like agreement, I think contract. But you might tell me I'm wrong. Well, so what they're obliged to file under the regulations is an annual list of mines. If you're a self-insurer, you have to apply to be approved by DOL as a self-insurer. I got that. Right. We were approved back when we owned Apogee. We were approved after we sold that. And so you file something. You do it annually? It's supposed to occur annually. They don't exactly enforce that. But suffice it to say there are filings before and there are filings after. You don't have to reapply annually though, right? It's a renewed certification. But it's substantially the same thing. You have a list of all the mines that are covered, and they adjust. I think that's 109 in the regs. They adjust the amount of security that you have to post. You do that by entering a contract with a surety. This is an insurance company in North America. It's a contract between the surety, the mine, operator or parent company, as the case may be, and the Department of Labor. And you post enough bonding to cover your past, present, and future liabilities for the list of mines that you currently own. Then when you sell one, the next time you go in and you apply, you list your then-existing collection of mines, and you post whatever labor insists you post for financial security. At all times, ARCH complied with this, accurately listed the mines that it was reporting. You can see that there's a great declaration at pages 104 through 106 of the addendum that traces out our filings on this. I don't think it's disputed that at all times we submitted this material. They knew that we did not own these mines anymore, and the folks at Magnum and then at Patriot submitted their own when they were self-insured, I should say. Magnum, I think, for a while was commercially insured. And don't those self-insurance filings, at least as I look at them, don't they also request some information regarding financial health, like information about asset levels and the like? Yes, yes, yes. That's all part of the – to be a self-insurer is a fairly serious thing. And that goes to – and you don't have to take my word for this – the GAO report, which is also included in the addendum, is kind of a scathing review of the Department of Labor for failing to do a good job of requiring mining companies to put in enough cash for the self-insurance, which is what leads to this case, by the way. What's happened here, if you want to take a step back, what happened here is they didn't adequately assure the financial reliability of companies like Patriot. Then they went under – and this is from the GAO. This isn't Arch saying this. Then Patriot declares bankruptcy, and they're rapidly looking to shift expenses to other people. And that's when you get Bulletin 1601, which is the new rule that's in effect in this case, but done without any notice and comment and done retroactively, which violates both the APAA and the Constitution. But did the ALJ or the Board ever rely on that Bulletin? Yes. I mean, they certainly cite it, and their reasoning is unmistakably Bulletin 1601 reasoning. And again, what I submit for your honor on that are the earlier cases like Allen and Atkins where the very same Patriot bankruptcy. So that is, of course, not allowed. And then I would be remiss if I didn't note that if there were any question about the fact that the policy had changed, Arch endeavored to introduce further evidence of that policy change, which the ALJ rejected, pointing to – this is at page 4 of the appendix – the five things that you're allowed to – it's literally checkboxes. And they said you should have brought it in front of the district director, but that's – of course, we're not challenging liability under those five criteria. We're making an APA lawsuit. And that's where ACOSTA comes in. At the risk of sort of crowding the field, that's where ACOSTA plays a role. Because in ACOSTA, we were assured by the D.C. Circuit, and they were assured by the Department of Labor, that we would have our day in court, our chance to develop that evidence, if it's necessary. Again, I don't think it is, because regulatory text structure and past practice show that there has been a change. But if there were any doubt, a remand for the chance to introduce that evidence would do the trick. With your permission, I do have another question. I'm trying to get around. We have this appendix. We have this submission of things that were not before the ALJ. And so the liability submission rules, when the clock ends, discovery is over. And so I guess the best argument – do we accept these documents now on appeal? Oh, of course. So in terms of reliability, many of these are introduced in other cases, as we trace out in our motion. Additionally, if you don't want to accept them on appeal, just clarify that we can put them in front of the ALJ. We could do that as an alternative. But again, I don't think the court needs to go that far, because as with most rulemaking challenges, it's the rule and the past practice and industry usage. We cite the First Circuit case in Harvard College just last year. Those establish that a change has occurred, and nobody attempts to defend that as having complied with the APA. Can I ask one more question, please? So I want to make sure I understand your argument. You said a moment ago that your client could only be liable as a self-insurer. Are you arguing that under the statute and regulations, it couldn't be liable as a parent and an operator, or that's not what the ALJ found? So I would start with the latter point, Your Honor. Okay. Because it seems like there is a path under the statutes that says that parents can be operators. And then 932.1.2 says, nothing in the subsection shall relieve any prior operator of any liability. It's not necessarily a straightforward path, but it seems like there is a path. So I just want to make sure I understand what you're saying. If I may test the court's patience. No, you please. 932 speaks that if you are a prior operator, you will not be relieved. We were never an operator. Apogee was the prior operator. But as a parent of Apogee, why wouldn't you qualify under the statute that says a parent could be an operator? Because we didn't, and this is defined at 20 CFR 725.493. We did not employ the person, direct his duties. We certainly were not formally his employer. And again, this is where I raised the piercing the corporate veil point. It's not for nothing that these are different companies. We didn't employ him. Arch didn't run the mine. So if it came to that judge, I would, I think we actually could win that issue, but we don't need to. The good news is we don't need to win that because Chenery investment company versus camp, all these cases that point out that only the rationale that they articulated at the time. Okay. Thank you. Yep. Mr. Dre, you wanted some rebuttal time, which we'll give you, but let's hear from let's hear from the director or the department's council. And we'll go from there. Okay. Thank you. Honors. May it please the court. My name is Sean Bukowski and I represent the office of workers compensation programs. I'm going to start by saying I'm a little bit confused about what Archer's actual position is on a few things. After hearing my call, my colleagues opening or argument here. I heard him saying that, you know, the problem here is that below arch was treated like a self-insurer, but if you look at page, you know, in their reply, for example, on page two, they say the problem is rather on page three, the problem is that below the ALJ and the board, the agency treated it like an insurer, not an operator. But be that as may, I don't think the end really, I don't think it makes much of a difference. That's what he just said. And he was arguing that he was treated as a self-insurer, not an operator, right? Well here they seem to be saying that they're treated like an insurance carrier, you know, rather than operate. Again, I think that might be a little too in the weeds or might be something that you don't need to actually address the side of this case, because the answer is that liability in general under the statute is tied to whoever is on the risk, the entities on the risk on the minor's last day of employment. And this is not particularly unusual in the world of workers' compensation. That's, you know, the last employer rule as they call it is sort of the default rule for occupational disease cases. What is your position on the basis that they were held liable? So what statute or regulation did the ALJ and or board hold ARCH liable under? Well, I think it's, it's two things. I think it's, I disagree. I think it is partially a issue of contract, you know, that ARCH did agree when ARCH applied to be self-insured, it has done it several times. And when Mr. Grimes last worked for Apogee, ARCH's self-insurance authorization said this covers ARCH employees and also employment. And ARCH has never contested that. I don't think that contract is in the record anywhere. How can we evaluate that? Well, I can, it is not in the record. I think that, but ARCH has repeatedly admitted it as recently as in their reply brief, they said that, you know, Apogee was covered by ARCH. Hold on one second here. This is where we, we've got to, we got to make sure that we, what limitations does Chenery place on this? I, I thought we, we, we see Chenery all the time. We see it. And so we do, for better or worse. And I thought that what, what Chenery was doing was saying the appellate court. So we can't go beyond the rationale that came out of the administrative ruling. So that, I think that's what's probably animating Judge Senev's question. So then the question becomes if that's right, Chenery is a US Supreme Court decision, right? So, what were the statute stat, what, what statute or combination thereof or regulation or combination thereof was the basis for the imposition of the liability? And it can't be a contract that wasn't considered by the ALJ or the board and not before us. And that's why you make an argument on page 34 of your brief that I've, I probably why you're getting these questions. You seem to make an argument on page 34 that it, that it's contractual, but I don't, I don't, I've never thought of this case as a breach of contract case. And that's not what the ALJ or the board said. And I don't even know what contract we're talking about. I haven't reviewed it. I don't know who the parties to it are. Well, ARCH is ARCH. I'm sorry. Maybe it would be helpful in answering that question. If you would please, to go back to the prim, the original premise under what statute or regulation did the ALJ and the board hold ARCH liable? And it wasn't this contractual theory. It was not that that's, I think importantly in the background, I think ARCH's admission that it self-insurance covered. So what statute or regulation? The regulation is 725, 494 and 495. Can you be a little more specific? Cause sure. And is it your position that the ALJ and the board only held them responsible as self-insurers and not as an operator? I think that the the board's reasoning, the board's reasoning is a little more vague. I think that the ALJ did hold ARCH responsible as a self-insurer. You know, the, the holding is Apogee as self-insured through ARCH. And is that what you are asking us to affirm on as a self-insurer? Yes. Okay. And then if you could walk us through, please, how you get there. Sure. I mean, well, the, the regulations, 493, 494, 495 talk about identifying the liable operator, which in this case is Apogee, but Apogee is only liable if it's able to pay benefits. Apogee, obviously now that it's bankrupt, cannot pay benefits directly itself, but that doesn't matter under the regulations because as long as you are, even if you're out of business, if you either had a commercial insurance policy or were authorized to self-insure, you're still deemed to be able to pay benefits. And therefore can still be a potentially liable and a liable operator. And you're taking us to 72495E. Yes. Yes. Then the next question is the one Judge St. Eve was asking you. And that is, I don't think, and I'm not, I'm not trying to be flippant about this. I don't think we can sit here with pencils and yellow pads and identify the provisions in the courtroom. I think we're reviewing a decision that's already been made by the ALJ. And then it was reviewed by the board, right? So it's not up to what we just brainstormed. You can't make up a new theory. No, I agree. We can't. I agree. We can't. Okay. So therefore, doesn't it, don't you have to focus or don't we have to focus on the exact question? Judge St. Eve is asking where in the ALJs opinion is the authority for the search identified? I think it's 490. Well, the ALJ particularly rides on a 494E and 495B. Okay. Hold on. Give us a page number. Give us a page. I'm sorry. I'm looking at a page 476 of the big appendix. It's page 24 of the ALJ decision. It's 24 of the ALJ opinion. It is 476 of the appendix. Okay. So E2, is that what you're arguing? E and 495B. Well, the ALJ relied on both of those. Apogee has an obligation, you know, to show that it isn't able to pay and ARCH failed to do that. It failed to show that ARCH didn't cover. And again, ARCH has always admitted, and I think it's fair to consider a party's admission that's, and they've admitted this throughout the case. They've admitted this before the ALJ, they admitted it before the board, they admitted it in their opening brief and it's late in their reply brief that ARCH's self-insurance included Apogee through 2006. That's just never been in dispute. Now, are you making that point because you're also making some kind of contractual obligation point? In other words, my question is just very basic. Why are you saying that? What's the legal significance of it? The legal significance of that is that under the rules that they've been interpreted in the courts, a self-insurer's liability is determined based on the minor's last exposure, just like an employer's liability is based on the last exposure, explicitly in the rules, just like an insurance company's. Okay, so the question that that raises is, does that mean that in a situation like this, that ARCH, because we don't have a dispute, they were self-insuring, right? And it included Apogee in particular, yes. Apogee was the subsidiary that employed the minor, right? No question about it. Okay. Is that liability indefinite? Yes. In duration? Yes, and less release. And I think that's one of the things that ARCH keeps going back to in its brief, and it kind of treats this indefinite liability as this aberration or this strange outlier, but it's not. Perpetual liability is the default rule for everyone. If you are an employer and you employ a minor, and their last day of work occurred for you while they worked for you, you are liable forever for claims by that minor, no matter when they're filed. What's the legal support for that in the ALJ's opinion? I don't know that the ALJ specifically addresses that, but the legal support is the statute you were talking about. I've asked about a lot of statutes. 30 U.S.C. 921 I-2. And I want to say that ARCH, I think, misstates what that statute says in their reply brief. If you look at... I lost the page here. Page 17 of their reply brief, ARCH says that the... I'm sorry to interrupt. 932 I-2 says nothing in the subsection shall relieve any prior operator of any liability under this section. And ARCH was not deemed the operator. Apogee was. So how does that get the ALJ there? Correct, Your Honor. I think you have to look at the cases that have addressed past self-insurance situations. I think the two that jump to mind are the District of Columbia Circuit's decisions in the United States versus Insurance Company of North America cases. And then also the Labor Department's past practice in the old Ben Cole case from this court. In the INA cases, the D.C. Circuit held that surety bonds, the surety bonds that a self-insurer has to post... When you're authorized to self-insure, you've got to post some sort of security, OK? And if you choose to do that with a surety bond, there's a particular form that you have to use. The D.C. Circuit said that a surety's liability under those bonds is not based on when the claim happens. The surety's liability under those bonds is based on when the minor was employed by the self-insured operator that the self-insurance is guaranteed. So again, if you have a situation where the employer's liability is based on the minor's last day of employment, OK, and if the employer is insured, the insurer's liability is based on the last day of employment, and if the employer is self-insured and has a bond, the surety's liability is based on the last day of employment. It would be completely irrational for a self-insurer's liability to be based on some other date. Mr. Mikowski, let me ask you this. What makes this case complicated, in part, is the corporate transactions that occurred. So when the transaction occurs with Magnum, and Magnum acquires Apogee, and in turn, down the line, Patriot does. Patriot acquires Magnum and the subsidiaries. Does the Department of Labor, at that point in time, does it care about the financial health of Magnum and Patriot Coal, or would it say, we could care less because the last employer of Mr. Grimes was Arch? So we don't care at all about Magnum's health. Right. Well, I mean, I guess the context of us caring, if you're talking about in the context of us, of the Labor Department, authorizing Magnum or later Patriot's self-insurer, then I think we would care. It just seems to me that when corporate transactions happen as they happen, as best I've been able to figure this out, you very much care. You very much care. We care that the transactions happen, but we have no power to stop it. No, no, no. I know you're not a party to them, but what it does not seem consistent with everything that I've read that you'd say, we don't care. Why don't we care? We don't care because we are focused singularly upon the financial health of the last employer, Arch, because Arch is on the hook indefinitely. And so the fact that Apogee was sold as part of a transaction to Magnum and in turn to Patriot, it doesn't matter. We are always going back to Arch. But again, that's only for cases where the miners only worked for Arch. A lot of miners kept working for Apogee after Apogee was taken, it was bought by Magnum, and kept working for Apogee after Apogee was acquired by Patriot. In those cases, those have all become trustworthy abilities. None of them are. So that's why we're not violating. I'm sorry. Okay, if Patriot had not gone into bankruptcy and Apogee had not gone into bankruptcy, who do you expect would have paid the grime's benefit? I suspect that would have been Patriot. Why? Because Patriot was authorized to self-insure and its authorization was made retroactive. So it was unusual in the sense that Patriot was liable for claims. Okay, and let's hypothetically suppose that Patriot said, we're not interested in paying it and we will not pay it. Then we would have damed Arch. And what Arch could do in that situation is take the sales agreement it made with Magnum and file for indemnification. Say, hey, Magnum, you promised you would pay claims like this, and you're not doing that. That's just a basic contractual delegation rule. And I think if you accept Arch's position here, I don't want to sound too hyperbolic, but it's hard to imagine how you could have a regime of contracts where if I promise, Your Honor, if I make a contract where I have some duty to perform for you, in general I'm allowed to delegate that to someone else. I can hire someone else to do that duty for me, and that's fine. But if that person doesn't do it and you come to me and say, hey, Sean, you promised you would do this thing, and I hold up the agreement I had with the third party, that third-party agreement doesn't extinguish my obligation to you. I'm still on the hook to do that to you. And so I have to do it for you, and then my benefit is to go after the third party. Mr. Bukowski, I want to ask you about a provision that neither party cited, and maybe it's not fair because you weren't on notice, and you could tell me if you're not familiar with it. So a lot was made in the briefing about the distinction between commercial insurers and self-insurers and arguments that self-insurers are treated differently, the provisions for commercial insurers about what triggers when don't apply to self-insurers. But the regulation at 103, the way I read it, essentially says that they're treated the same. I'm sorry, you're looking at 726-103? 726-103. And I don't know if I'm misreading that, and I realize the ALJ didn't rely on it, but it seemed like a straightforward response to the argument that self-insurers and commercial insurers are treated differently. And if you're not familiar with it, I don't want to catch you off guard. But it is true that self-insurance and commercial insurance are different things. But in the cases that our sites say that, we don't disagree with that. And just like we don't disagree, there's a difference between claim triggers and occurrence triggers, like in the Harvard College case. But that doesn't mean that self-insurance and insurance have to be the opposite in every single respect. And it would be really quite strange if they were, since they're designed to perform the same function, which is protect the trust fund. So at the very least, you'd expect their liability triggers to be the same. Okay. We asked you a lot of questions. Are there any points that you wanted to make that you just haven't made? One last thing I'd like to make. ARCHIS claimed that it was surprised it couldn't have expected this. First off, that is an argument that kind of sounds unstoppable, which is not a claim they make and not something they could prove here, because it's against the government. There's no affirmative misconduct. Not anywhere. Not in the record. Not in the appendix. And not in the addendum of these extra record materials they're trying to get in. And also, you know, the United States versus Insurance Company of America decisions were in the mid-1990s, well before ARCH made its transaction with Magnum. So it certainly should have been aware that there's a potential for ongoing, lasting liability for a self-insured under this circumstance. And by the same token, the old Ben Cole case from this court, where DOL, in a very similar situation to this, did the same thing, where they held the surety liable in a situation almost exactly like this other liability. While that decision was right after the agreement, the assignments of liability in that case were several years before. So ARCH knew how DOL treated Horizon, and ARCH knew about, or should have known about, the INA decisions in the D.C. Circuit. With that, I will close. Thank you for giving me the extra time. You're on. No, absolutely. Complicated case. Okay. Very well, Mr. Murkowski. Mr. Jay, we'll give you a few minutes. Thank you. I'd like to pick up on a number of the questions that the court asked about the distinction between commercial and self-insurance. Although I'm not particularly familiar with 103, I understand that to be in reference to commercial policies. But more importantly, tech structure and prior practice all confirm that these are different things. And I call the court's attention, in a special way, to the commercial endorsement that the Department of Labor requires all of these policies to carry that are commercial. And it says that you must cover, quote, disease caused or aggravated by exposure, which the last day of the last exposure occurs during the policy period, end quote. That is different. There is nothing like that in subpart C, which is self-insurance. That is only in the commercial insurance context. Expressio unius. We cite this court's decision in Ray Van Dyke about not blurring requirements in different statutory or different regulatory subparts. That's pretty clear. You have the Harvard case that talks about the difference between occurrence-based and claims-based triggers just in the last few months out of the First Circuit. We presume that agencies act against the common law background of insurance. Past practice, you know, we gave the examples, particularly of Adkins and Allen, all of that. And I guess the biggest one I should have started here is the fact that, as a regulatory matter, you have to submit the mines that you are self-insuring. And that's where 726.103 kind of goes, pulling the thread, is that regulations specify that self-insurers, you know, they insure designated covered mines, not individual. Yes, Your Honor, that's right, because they buy and sell mines all the time. And by the way, on the subject of whether or not the bankruptcy by Apogee would somehow create an anomaly or an unthinkable situation, that's not true. That's what the trust fund is there for. And I would like to sort of emphasize this point. Mrs. Grimes, the widow, will be paid to the penny, the same amount, regardless of how this court decides the case. It only impacts whether Arch is responsible or the trust fund is responsible for that payment. Because Arch was only held liable as a self-insurer, and I call the court's attention to the heading, you know, there was some question about whether the board decision was as clear as the ALJ on this point. The heading on page 641 of the appendix is responsible insurance carrier. That is the basis under which they held Arch liable. It's a departure from prior practice. Maybe it would be defensible, but they've got to go through notice and comment if they want to do something like that. Okay. Thank you. Mr. Dray, Mr. Bukowski, thanks to both of you. We'll take the appeal under advisement.